**SO ORDERED.**

**SIGNED this 01 day of February, 2013.**

_____

**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

**IN RE:**

| | |
|---|---|
| **SEA HORSE REALTY & CONSTRUCTION, INC.,** | **CASE NO. 11-07223-8-JRL** |
| | **CHAPTER 11** |
| **DEBTOR.** | |

**SEA HORSE REALTY & CONSTRUCTION, INC.,**

     **PLAINTIFF,**

     **v.**

**ADVERSARY PROCEEDING**
**CASE NO. 11-00377-8-JRL**

**CITIMORTGAGE, INC., SUCCESSOR-IN-INTEREST TO LEHMAN BROTHERS BANK, FSB,**

     **DEFENDANT.**

<u>**ORDER**</u>

This matter came before the court on Sea Horse Realty & Construction, Inc.'s ("plaintiff")

motion for summary judgment on the first, second, third, fourth, fifth and seventh claims for relief

asserted by CitiMortgage, Inc. ("defendant" or "CitiMortgage"), successor-in-interest to Lehman

1

Brothers Bank, FSB ("Lehman Brothers"),[1] as counterclaims in response to the plaintiff's complaint. The defendant filed a response opposing the motion for summary judgment. A hearing on the matter was held in Raleigh, North Carolina on January 14, 2013.

## BACKGROUND

On June 9, 2003, Roscoe Lewis I Limited Partnership and Roscoe Lewis II Limited Partnership conveyed, in fee simple, real property known as Lot No. 2 shown on a plat of "Northbank" and located at 10007 Old Oregon Inlet Road, Nags Head, North Carolina ("property") to the plaintiff by general warranty deed ("deed").[2]  Following execution, the deed was recorded in Book 1503 at Page 213 of Dare County Registry, Dare County, North Carolina.  The plaintiff is a North Carolina corporation engaged in the construction, management and rental of real property in northeastern North Carolina.  Rickard B. Mercer ("Mercer") is the president and sole shareholder of the plaintiff.

On January 21, 2005, Mercer executed a promissory note in the original principal amount

---

[1]The promissory note, deed of trust and any rights due thereunder, originally held by Lehman Brothers, were transferred to the defendant by assignment dated July 15, 2011 and recorded in Book 1872 at Page 127 in Public Registry of Dare County, North Carolina.

[2]The deed contains the following recitation:

WITNESSETH, that the Grantor, for valuable consideration paid by the Grantee [the debtor], the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee [the debtor] in fee simple, all that certain lot or parcel of land situation in the City of Nags Head, Nags Head Township, Dare County, North Carolina and more particularly described as follows:

Lot No. 2 shown on a plat of "Northbank[,]" prepared by Quible & Associates Engineers and Surveyors, dated June 14, 1985 and recorded in the Plat Cabinet B, at Slides 300 and 301 of the Public Registry of Dare County, North Carolina.

2

of $1,500,000.00 ("promissory note") and a deed of trust in favor Lehman Brothers ("deed of trust"), which pledged the property as security (collectively "instruments").[3]  The deed of trust was recorded on January 24, 2005 in Book 1611 at Page 65 of the Dare County Registry.   By its terms, the deed of trust indicates that it was prepared by Lori Neal of Lehman Brothers and secured the repayment of the promissory note as well as Mercer's performance of all covenants and agreements under the instruments.  The deed of trust contains a definitions section, defining "Note" as the promissory note signed by Mercer dated January 21, 2005 and "Borrower" as Mercer.  The term "Property" is defined and incorporates by reference all that tract or parcel of land shown on Schedule A, which provides the following description: "Lot No. 2 as shown on a plat of 'Northbank[,]' prepared by Quible & Associates Engineers and Surveyors, dated June 14, 1985 and recorded in the Plat Cabinet B, at Slides 300 and 301 of the Public Registry of Dare County, North Carolina."  It lists the current address of the property pledged as security as 10007 Old Oregon Inlet Road, Nags Head, North Carolina.  The description and address of the property provided by Mercer in the loan application, borrower's affidavit and deed of trust match the description and address of the property conveyed to the plaintiff in the deed.  The plaintiff, not Mercer, was the record owner of the property on the date the instruments were executed and the deed of trust was recorded.

Prior to the loan closing, Mercer contacted Carolina State Mortgage Company ("Carolina State Mortgage"), an independent mortgage brokerage representing buyers in the purchase and refinancing of properties in the Outer Banks, North Carolina, to assist him in refinancing an existing construction loan on the property held by The Bank of Currituck, recorded in Book 1583 at Page 214

---

[3]Prior to executing the promissory note, Mercer submitted an application and borrower's affidavit to Lehman Brothers, stating that the proceeds of the promissory note were to be secured by the real property located at "10007 Old Oregon Inlet Road, Nags Head, North Carolina."

of the Dare County Registry.  Evelyn Talbott ("Talbott"), a mortgage broker with Carolina State Mortgage, used information provided by Mercer to locate a lender that would refinance the property. In October 2004 and prior to the loan closing, the property was inspected and appraised by Otis G. Culpepper of Culpepper & Associates ("Culpepper"), at the request of Carolina State Mortgage ("appraisal").  The appraisal estimated, as of October 9, 2004, the market value of the property as $3,000,000.00.  On the appraisal report, Culpepper indicated that the current owner of the property was "Sea Horse Realty," not the borrower, Mercer.[4]

Paulette S. Benz of The Law Office of Paulette S. Benz, P.L.L.C. (collectively "Benz") was employed as the settlement agent for this transaction.  In that capacity, Benz received instructions from Lehman regarding the necessary documentation to be included in the loan closing package. The closing documents, including the promissory note and deed of trust, were prepared by Lori Neal of Lehman Brothers and transmitted to Benz.   Neither Benz or Carolina State Mortgage prepared the closing documents.  Benz searched the title to the property, prepared a preliminary title opinion, obtained title insurance,  conducted the closing and disbursed the loan proceeds according to Lehman Brothers' instructions.  The preliminary opinion on title, prepared by Benz and forwarded to the Fidelity National Title Insurance Company ("Fidelity") for their approval, indicated that the plaintiff was the record owner of the property.  Thereafter, Fidelity issued a title insurance binder and closing protection letter to Benz, indicating coverage.  After Benz submitted her preliminary

---

[4]The appraisal contains a section entitled "Statement of Limiting Conditions and Appraiser's Certification," stating various conditions to which the appraisal report is subjected. Among those conditions is the provisio that the appraiser is not responsible for any legal matters affecting the property appraised or title to it.  Furthermore, "[t]he appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title.  The property is appraised on the basis of it being under responsible ownership."

title opinion listing the plaintiff as the record owner of the property, she received a facsimile from Talbott at Carolina State Mortgage requesting that the grantor in the deed of trust be changed from the plaintiff to Mercer.

After the deed of trust was recorded, Benz disbursed the proceeds of the loan. She tendered a check drawn from her trust account in the amount of $1,282,052.73 to The Bank of Currituck in full satisfaction of the existing deed of trust on the property.[5] Benz also tendered a check from her trust account for $68.00 to the Dare County Register of Deeds to cover recording fees, $25,465.00 to Carolina State Mortgage for their services, and $1,190.00 to Fidelity Title Company for title insurance. After deducting Benz's fees of $1,185.00, the excess loan proceeds of $188,735.60 were distributed to Mercer.

On May 18, 2009, Mercer filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, Case No. 09–04088–8–JRL.[6] The defendant filed a proof of claim (Claim No. 3) on May 29, 2009, in the amount of $1,543,555.91. The deed of trust and promissory note executed by Mercer in favor of Lehman Brothers were attached, as support, to the proof of claim. On June 29, 2009, Mercer filed an objection to the proof of claim, denying ownership of the property allegedly secured by the deed of trust and requested that the claim be treated, in its entirety, as a general unsecured claim. Because the defendant did not file a response opposing the treatment,

---

[5]The deed of trust in favor of The Bank of Currituck was marked satisfied on January 25, 2005. This deed of trust, on record with the Dare County Registry, was executed jointly by Mercer and the plaintiff. Mercer executed the deed of trust both in his individual capacity and as president of the plaintiff.

[6]In his Schedule A, filed along with his voluntary petition, Mercer did not list any legal or equitable interest in the property described in the deed of trust and serving as security for the promissory note. In Schedule B, Mercer does list his 100% interest in the debtor.

the court entered an order on August 12, 2009, allowing Mercer's objection and the defendant a general unsecured claim in the amount of $1,543,555.91. Mercer's chapter 11 plan, filed August 17, 2009 and confirmed on November 6, 2009,[7] included the defendant's unsecured claim in Class 10, which consisted of all allowed, undisputed, non-contingent claims listed in the petition or approved by the court that exceeded $5,500.00. The defendant held $1,543,555.91 of the general unsecured claims filed or scheduled in Class 10 of Mercer's plan ($1,917,273.08). Under the confirmed plan, the general unsecured claims are to be paid, pro rata, approximately seventy percent (70%) of the net sale proceeds of Mercer's real properties following payment of all senior classes.

On January 19, 2010, the defendant filed a complaint in Dare County, North Carolina against the debtor seeking, inter alia, reformation of the deed of trust; a declaratory judgment that the defendant holds a valid deed of trust; to quiet title; an equitable lien against the property; the imposition of a constructive trust; and a judicial sale of the property.[8] In conjunction with the state court proceeding and to protect and provide public notice of its interest in the property, the defendant filed a *lis pendens* in Dare County, North Carolina on January 20, 2010.

The plaintiff filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 21, 2011. The defendant filed a proof of claim (Claim No. 4–1) on January 23, 2012, asserting a secured claim in the amount of $1,785,986.02. The promissory note and deed of trust executed by Mercer were attached to the defendant's proof of claim. On June 26, 2012, the plaintiff

---

[7]After a confirmation hearing on October 7, 2009, an order confirming Mercer's chapter 11 plan was entered on November 6, 2009.

[8]The court cannot ascertain what standing, if any, the defendant had to commence this action in state court on January 19, 2010 because the promissory note, deed of trust and any rights thereunder was not assigned to the defendant until July 15, 2011.

6

filed an objection to the defendant's proof of claim, requesting that it be denied in its entirety. On September 7, 2012, the court entered a consent order continuing the hearing on the plaintiff's objection, pending the outcome of this adversary proceeding. The plaintiff filed its chapter 11 plan and disclosure statement on December 29, 2011, which included the defendant's claim arising out of the promissory note and deed of trust executed by Mercer on the property in Class 4. As for the treatment of the defendant's claim, the plan proposed no payment and indicated that it was seeking a judicial determination invalidating the deed of trust because the plaintiff, not Mercer, was the record owner of the property. A confirmation hearing was held on June 27, 2012 in Raleigh, North Carolina and the plaintiff's chapter 11 plan was confirmed by order entered July 3, 2012. In response to the concerns raised by the defendant at the confirmation hearing, the confirmation order changed treatment of defendant's claim in Class 4 as follows:

> (1) Treatment. As set forth above, the Debtor [plaintiff] is pursuing a judicial determination as to the Deed of Trust and expects that it will be invalidated. There will be no payment made to this class if the Debtor [plaintiff] is successful in the pending adversary proceeding. In the event that CitiMortgage is successful in the pending adversary proceeding and is awarded a secured claim against the Debtor [plaintiff], CitiMortgage shall receive the net sale proceeds from the sale of the real estate, currently held in Debtor's [plaintiff's] counsel's trust account. In the event that CitiMortgage is successful in the pending adversary proceeding and is awarded an unsecured claim against the Debtor [plaintiff], CitiMortgage shall be treated in Class 6 as a general unsecured creditor.

The plaintiff filed the present adversary proceeding on December 1, 2011 against the defendant, seeking a determination that the deed of trust is invalid and, as a result, the defendant does not have a claim against the plaintiff. On May 8, 2012, the plaintiff filed a partial motion for summary judgment against the defendant, contending that the deed of trust was unenforceable and the defendant had no security interest in the property because the deed of trust did not accurately

7

identify the obligation it secured.  Sea Horse Realty & Constr., Inc. v. CitiMortgage, Inc. (In re Sea Horse Realty & Constr., Inc.), AP No. 11-00377, 2012 WL 3249548 (Bankr. E.D.N.C. Aug. 7, 2012).  On August 7, 2012 and after a hearing, the plaintiff's motion for partial summary judgment was denied and the court precluded the plaintiff, as the debtor in possession, from exercising its strong-arm powers to invalidate the defendant's deed of trust, pursuant to § 544(a)(1).  Id. at *3 (concluding that "the filed *lis pendens* gave the debtor in possession constructive notice of the pending litigation over the property, and it is precluded from exercising § 544 strong-arm powers to include the property in the estate.  Rather it takes the property subject to the outcome of the pending litigation as to title.").

On October 9, 2012, the plaintiff filed the motion for summary judgment currently before the court, alleging that there is no genuine issue of material fact that the defendant's first, second, third, fourth, fifth and seventh claims for relief are barred by the three–year statute of limitations imposed by N.C. Gen. Stat. § 1–52(9).  The plaintiff asserts that the governing statute of limitations is three years, not the ten–year statute of limitations period proscribed by N.C. Gen. Stat. § 1–47(2), because the latter only applies in actions against the principal executing an instrument under seal. Because the promissory note and deed of trust were executed by Mercer, not the plaintiff, the ten–year statute of limitations would only apply in an action against Mercer.  The three–year statute of limitations, according to the plaintiff, accrued at or near the time the deed of trust was executed and recorded; therefore, it expired prior to the filing of the defendant's complaint in Dare County on January 19, 2010.  Because the mistake in the promissory note and deed of trust was obvious and was known or should have been discovered by the defendant or Lehman Brothers through the exercise of reasonable diligence at the time of execution and recordation or shortly thereafter.  In

8

support, the plaintiff contends that the appraisal listing the plaintiff as the current owner of the property was in the defendant's closing file, the defendant failed to adhere to its own internal procedure to verify ownership of the property and a simple examination of the Dare County Registry, if undertaken, would have revealed the incorrect entity appearing on the face of the deed of trust.

Relying on CPR 100, the plaintiff contends that based on the lack of an express representation to the contrary, Benz represented both Mercer and Lehman Brothers in the transaction and her knowledge that the plaintiff was the record owner of the property is imputed to the defendant and its predecessor–in–interest. This imputed knowledge of the mistake, according to the plaintiff, commences the statute of limitations. Alternatively, if mere recordation did not provide such notice, the defendant's collection of service fees for taxes, assessments and insurance[9] and the payment of city and county property taxes, on property in the plaintiff's name, by the defendant should have placed it on notice that the plaintiff owned by the property. Additionally, the continuous payment of Mercer's obligation under the instruments by plaintiff on checks drawn from its account, should have caused the defendant to inquire as to the ownership of the property.

Contrary to the plaintiff's affidavits, the defendant alleges that the constructive knowledge of Benz or Carolina State Mortgage cannot be imputed and commence the running of the statute of limitations because neither was representing nor acting in Lehman Brothers' interest. To support its argument, the defendant offers the sworn affidavits of Talbott and Ellen Hatfield ("Hatfield"), a vice president with CitiMortgage. With respect to the transaction, Talbott asserts by affidavit that

---

[9]The deed of trust also authorized the lender to charge the borrower a one-time fee for real estate tax verification or reporting service used by the lender in connection with the loan.

Carolina State Mortgage did not represent Lehman Brothers, rather it was contacted by and represented Mercer in the transaction. According to Hatfield, the defendant first discovered the discrepancy – that Mercer was not the record owner of the property, despite executing a promissory note and deed of trust – during Mercer's individual bankruptcy case, which was filed on May 18, 2009. Alternatively, the defendant relies on <u>Friedland v. Gales</u> to assert that the doctrine of equitable estoppel precludes the plaintiff from asserting the statute of limitations as a defense. 131 N.C. App. 802, 806, 509 S.E.2d 793, 796 (1998).

There is uncontradicted evidence that the real property tax records on file with the Town of Nags Head Tax Department and the Dare County Tax Department corresponding to the property list the plaintiff, not Mercer, as the record owner from 2004 to 2011. These tax records, which are public record, give the parcel identification number for the property and corresponding book and page number for the deed in the Dare County Registry. Additionally, the defendant does not dispute that despite sending the monthly mortgage statements to Mercer, plaintiff tendered checks drawn from its account for payment of the obligations.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy proceedings by Rule 7065 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. A dispute is genuine "if the evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct.

2505, 91 L. Ed. 2d 202 (1986). Facts that are "material" for purposes of summary judgment are those that "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not [preclude summary judgment]." <u>Id.</u> The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962).

## DISCUSSION

### A. Applicable Statute of Limitations

The threshold issue, central to the plaintiff's motion for summary judgment, is whether the three-year limitations period in N.C. Gen. Stat. § 1–52(9) or the ten-year limitations period in N.C. Gen. Stat. 1–47(2) applies to the causes of action asserted by the counterclaims.

Section 1–15 of the General Statutes of North Carolina states that "[c]ivil actions can only be commenced within the periods prescribed in this Chapter [1 of the North Carolina General Statutes], after the cause of action has accrued . . . ." Section 1–52(9) of Chapter 1 proscribes a three-year limitations period on actions "[f]or relief on the ground of fraud or mistake;" and states that "the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." N.C. Gen. Stat. § 1–52(9); <u>Stone v. Gateway Bank & Tr. Co. (In re Stone)</u>, AP No. 11–00006, 2011 WL 5909158, at *3 (Bankr. E.D.N.C. Aug.

11

15, 2011) (emphasizing that, under North Carolina law, "an aggrieved party seeking reformation of

a deed based on mutual mistake has three years to file its cause of action." (citing N.C. Gen. Stat.§

1–52(9)).

On the contrary, N.C. Gen. Stat. § 1–47 proscribes a ten–year statute of limitations for "an

action . . . [u]pon a sealed instrument or an instrument of conveyance of an interest in real property,

against the principal thereto."  N.C. Gen. Stat. § 1–47(2); see, e.g., Pickett v. Rigsbee, 252 N.C. 200,

206, 113 S.E.2d 323, 326 (1960) (emphasizing that, "[b]y its express terms, that statute [N.C. Gen.

Stat.§ 1–47(2)] is applicable only to principals."); Howard v. White, 215 N.C. 130, 131, 1 S.E.2d

356, 356 (1939) (holding that the ten–year statute of limitations period prescribed for an action

"upon a sealed instrument against the principal thereto" inapplicable to an action against an

accommodation endorser because he was not a principal thereto).

North Carolina courts have interpreted the phrase "relief on the grounds of" in N.C. Gen.

Stat. § 1–52(9) broadly to apply to all actions, both legal and equitable, where fraud or mistake is

a basis or an essential element. Cooper v. Floyd, 9 N.C. App. 645, 649, 177 S.E.2d 442, 445 (1970).

The basis for the relief sought in each of the counterclaims asserted by the defendant (reformation,

declaratory judgment, quiet title, equitable lien, constructive trust, and unjust enrichment) involves

mistake.  Because mistake forms the basis for relief sought by the defendant in the above–mentioned

causes of action, the statute of limitations period in N.C. Gen. Stat. § 1–52(9), applicable to mistake,

controls. See, e.g., Hice v. Hil–Mil, Inc., 301 N.C. 647, 654–55, 273 S.E.2d 268, 272–73 (1981)

(stating that an action for reformation of a deed based on mutual mistake is subject to a three–year

statute of limitations);  J. Lee Peeler & Co. v. Makepeace, 96 N.C. App. 118, 119–20, 384 S.E.2d

283, 283–84 (1989) (holding that where mistake forms the basis for imposing a  constructive trust

or a claim of unjust enrichment, the limitation period applicable to mistake controls); <u>accord</u> <u>Cooper</u>, 9 N.C. App. at 649, 177 S.E.2d at 445 (emphasizing that N.C. Gen. Stat. § 1–52(9) "applies to all actions where fraud [or mistake] is the basis or an essential element[.]").

The statute of limitations governing the counterclaims in this action is three years, not the ten–year period advanced by the defendant, because the latter is only applicable to an action against the principal executing an instrument under seal. Because the promissory note and deed of trust were executed by Mercer, not by the plaintiff, the ten–year statute of limitations in N.C. Gen. Stat. § 1–47(2) does not apply. Having determined that N.C. Gen. Stat. § 1–52(9) proscribes the applicable statute of limitations for the defendant's counterclaims, the court now turns to the issue of when the causes of action accrued.

### B.  Statute of Limitations

Under North Carolina law, after a defendant or counterclaim defendant pleads the statute of limitations as an affirmative defense, the opposing party has the burden of demonstrating that the action was brought within the applicable limitations period. <u>Little v. Rose</u>, 285 N.C. 724, 727, 208 S.E.2d 666, 668 (1974); <u>see</u> <u>Georgia–Pacific Corp. v. Bondurant</u>, 81 N.C. App. 362, 363–64, 344 S.E.2d 302, 304 (1986) ("North Carolina, apparently alone among American jurisdictions, continues to adhere to the rule that once the statute of limitations has been properly pleaded in defense the burden of proof shifts to the plaintiff to show that the action was filed within the statutory period."). "Where a claim is barred by the running of the applicable statute of limitations, summary judgment is appropriate." <u>Webb v. Hardy</u>, 182 N.C. App. 324, 326, 641 S.E.2d 754, 756 (2007).

The Fourth Circuit, interpreting North Carolina law, observed that "the notice which starts the running of the statute [of limitations] is not complete information of all the details of the

transaction[,] rather it "starts to run when the plaintiff acquires sufficient information to give rise

to a reasonable belief that a fraudulent [action or mistake] has occurred." New Amsterdam Cas. Co.

v. Waller, 323 F.2d 20, 26 (4th Cir. 1963).  The statute of limitations for claims based on mutual

mistake "begins to run from the discovery of the mistake, or when it should have been discovered

in the exercise of reasonable diligence." Lee v. Rhodes, 231 N.C. 602, 602, 58 S.E.2d 363, 363

(1950); see Feibus & Co. v. Godley Constr. Co., 301 N.C. 294, 304, 271 S.E.2d 385, 392 (1980)

(noting that the statute of limitations for an action based on mistake accrues at the time of discovery,

"*regardless* of the length of time between the fraudulent act or mistake and discovery of it.").

"Failure to exercise due diligence in discovering a mistake has been determined as a matter of law

where it was clear that there was both capacity and opportunity to discover the mistake."  Huss v.

Huss, 31 N.C. App. 463, 468, 230 S.E.2d 159, 163 (1976) (citation omitted); accord Moore v.

Fidelity and Cas. Co. of N.Y., 207 N.C. 433, 177 S.E. 406 (1934); Jennings v. Lindsey, 69 N.C.

App. 710, 715, 318 S.E.2d 318, 321 (1984) ("[W]here a person is aware of facts and circumstances

which, in the exercise of due care, would enable him or her to learn of or discover the fraud, the

fraud is discovered for the purposes of the statute of limitations."(citations omitted)).

North Carolina courts have addressed and provided an array of circumstances where parties,

as a matter of law, have failed to exercise due diligence in discovering a mistake or fraud, despite

having both the capacity and opportunity. Spears v. Moore, 145 N.C. App. 706, 551 S.E.2d 483

(2001); Grubb Props, Inc. v. Coldwell Banker Comm. Grp., Inc., 101 N.C. App. 498, 400 S.E.2d 85

(1991); Huss, 31 N.C. App. at 468, 230 S.E.2d at 163; Morgan v. Cadieu, No. COA11–564, 2011

WL 6402192 (N.C. Ct. App. Dec. 20, 2011) (unpublished); Cascadden v. Household Realty Corp.,

WCRSI, LLC, No. COA08–805, 2009 WL 1054035 (N.C. Ct. App. Apr. 21, 2009) (unpublished).

14

The court finds these cases instructive.

In <u>Morgan</u>, the North Carolina Court of Appeals held that the plaintiff had both the capacity and opportunity to discover the mistake in the recorded deed where his attorney and real estate agent reviewed the deed prior to execution and he was given copies of all the documents he executed at the closing. 2011 WL 6402192, at *2–3. Had the plaintiff in <u>Morgan</u> "exercised due diligence he would have discovered on or soon after the date of the closing that the deed he executed conveyed all of his interest in the property in fee simple to [the] defendant[.]" <u>Id.</u> at *2 (holding that the trial court correctly determined that the plaintiff's claim for reformation was untimely and, therefore, barred by the statute of limitations). Likewise in <u>Grubb</u>, the plaintiff brought an action seeking to reform a deed to include an adjacent tract that was allegedly omitted due to fraud or mutual mistake. 101 N.C. App. at 501, 400 S.E.2d at 87–88. In holding that the plaintiff's action was barred by the statute of limitations, the court observed that the discrepancy in the deed could have been discovered by comparing the legal description in the deed to a survey of the property. <u>Id.</u> at 501–02, 400 S.E.2d at 88.[10] This "failure to take the simple steps that would have enabled it to ascertain that the 1.283 acre parcel had not been conveyed[,]" according to the court, "cannot be equated with reasonable care." <u>Id.</u> Similarly in <u>Cascadden</u>, the plaintiffs, after closing a loan in January 2001, noticed several inconsistencies with their first billing statement. 2009 WL 1054035, at *1. After reviewing copies of their loan repayment agreement and security agreement, the plaintiffs discovered that their signatures on both instruments had been forged. <u>Id.</u> Further investigation by the plaintiffs revealed

---

[10]The plaintiff in <u>Grubb</u> did not have the property surveyed or verify the legal description in the deed against the apparent metes and bounds of the property. 101 N.C. App. at 501, 400 S.E.2d at 87. According to the court, had the plaintiff done so, it would have discovered the omission of the 1.283 acre tract. <u>Id.</u>

that their signatures on their deed of trust, recorded in the Onslow County Register of Deeds, were also forged.  Id.  The plaintiffs filed a complaint on March 8, 2008, which was subsequently dismissed by the trial court for failure to state a claim upon which relief can be granted.  Id.  On appeal, the North Carolina Court of Appeals affirmed, holding that the above "allegations reveal [the] plaintiffs had the capacity and opportunity through reasonable due diligence to discover the fraud before 5 March 2005,  a date that would have been three years before filing the complaint." Id. at *2 (citing N.C. Gen. Stat. § 1–52(9)).

The court addressed the application of N.C. Gen. Stat. § 1–52(9) to an action for reformation of a deed in Stone.  There the plaintiffs sought reformation of a deed to include an additional grantee, who was mistakenly omitted although she was an obligor on the promissory note and deed of trust granting a security interest in the property. 2011 WL 5909158, at *1. The court rejected the plaintiff's argument that the statute of limitations did not toll until they filed their voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Id. at *3.  Relying on Grubb, the court concluded that the "plaintiffs had both the opportunity and the capacity to discover the mistake, and their failure to do so establishes the absence of ordinary diligence."  Id. at *4 (emphasizing the affirmative duty placed on the plaintiffs "to ascertain who held title to the Beaufort property since they used the Beaufort property to acquire a line of credit.").  The plaintiffs in Stone "could have discovered the mistake by reading the deed since the deed was properly recorded in Carteret County." Id. at *4 ("A causal reading of the deed would have put the plaintiffs on notice of the mistake in the deed.  In addition, the public tax records show that the Beaufort property is owned solely by Mr. Stone.").  The undisputed information contained in the plaintiffs' statements and tax records, according to the court, established the absence of reasonable diligence as a matter of law

16

and that the mistake should have been discovered by the plaintiffs prior to the filing of their petition.

<u>Id.</u> at *5.

The discovery of a fraud, mistake or misrepresentation, may be imputed for purposes of commencing the statute of limitations.  A practice that was reinforced by the North Carolina Supreme Court in <u>Peacock v. Barnes</u>, 142 N.C. 215, 55 S.E. 99 (1906):

> A man should not be allowed to close his eyes to facts readily observable by ordinary attention and maintain for its own advantage the position of ignorance. Such a principle would enable a careless man, and by reason of his carelessness to extend his right to recover for an indefinite length of time, and thus defeat the very purpose the statute was designed and framed to accomplish. In such case a man's failure to note facts of this character should be imputed to him for knowledge, and in the absence of any active or continued effort to conceal a fraud or mistake, or some essential facts embraced in the inquiry, we think the correct interpretation of the statute should be that the cause of action will be deemed to have accrued from the time when the fraud or mistake was known or should have been discovered in the exercise of ordinary diligence.

<u>Id.</u> at 218, 55 S.E. at 100 (emphasizing the importance of reasonable diligence ).

The defendant's assertion that the knowledge of Benz, as the closing attorney for the transaction, may not be imputed to the defendant because she was not representing Lehman Brothers or its interests at the closing is incorrect.  In response to various inquiries regarding the role of an attorney in a residential loan transaction, the North Carolina State Bar issued the following opinion:

> In the usual residential loan transaction:
>
> (a) A lawyer may ethically represent both the borrower and the lender.
>
> (b) If the lawyer intends not to represent both the borrower and the lender, he [or she] shall give timely notice to the one he intends not to represent of this fact, so that the one not represented may secure separate and timely representation.
>
> (c) If he [or she] does not give such notice, he [or she] shall be deemed to represent both the borrower and the lender.

(d) If he [or she] represents only the borrower, he may nevertheless ethically provide title and lien priority assurances required by the lender as a condition of the loan.

(e) He [or she] shall clearly state to his [or her] client(s), whether the borrower or the lender, or both, who he [or she] represents and the general scope of his [or her] representation.

N.C. St. B. CPR 100 (April 15, 1977).  Furthermore, "[i]t is not material whether the lawyer is engaged by the borrower or by the lender or, if he is engaged by both, who engaged him first." Id.; see, e.g., N.C. St. B. RPC 44 (July 15, 1988) ("CPR 100 ma[kes] it clear that any attorney involved in the closing of an ordinary residential real property transaction represents both the borrower and the lender in the absence of clear notice to all concerned that such is not the case."); Johnson v. Schultz, 364 N.C. 90, 94–95, 691 S.E.2d 701, 703–704 (2010) (addressing the customary procedure and responsibilities of a closing attorney in a residential real estate transaction in North Carolina).  In the absence of timely notice to either Mercer or Lehman Brothers that she did not intend to represent them both, for purposes of the transaction, Benz represented both parties.  Under the circumstances, this joint representation of both Lehman Brothers and Mercer was permissible and any knowledge gained during the representation would be imputed to Lehman Brothers and Mercer.  Thus, the results of the title examination and preliminary title opinion performed by Benz revealing that the plaintiff, not Mercer, was the record owner of the property would be imputed to Lehman Brothers.

The defendant offered evidence that it relied on numerous representations made by Mercer regarding his ownership of the property, which ultimately proved to be misleading.  This evidence, by itself, is not sufficient to create an issue of material fact and preclude summary judgment because it is irrelevant to the determination of whether the defendant had the capacity and opportunity to

discover the mistake in the deed of trust or discern that the plaintiff was the record owner of the

property.  See Anderson, 477 U.S. at 248 (emphasizing that facts that do not affect the outcome of

suit are irrelevant and will not preclude summary judgment).  Although Mercer made several

misleading statements in connection with the transaction, neither the defendant nor Lehman Brothers

took any measures necessary to ascertain the veracity of his statements or confirm the identity of the

property's record owner.  A simple examination of the grantee–index of the Dare County Registry,

if undertaken, would have revealed that Mercer was not the record owner of the property. Stone,

2011 WL 5909158, at *4.

There are no facts indicating that either the plaintiff or Mercer prevented the discovery of

the discrepancy in the promissory note and deed of trust, which was submitted for recordation by

Lehman Brothers  in 2005. See Hudson–Cole Develop. Corp. v. Beemer, 132 N.C. App. 341, 346,

511 S.E.2d 309, 313 (1999) ("[W]hen the party relying on the false or misleading representation

could have discovered the truth upon inquiry, [he] . . . must allege that he was denied the opportunity

to investigate or that he could not have learned the true facts by exercise of reasonable diligence.").[11]

---

[11]This lack of evidence also defeats the defendant's argument that the plaintiff should be
equitably estopped from raising the statute of limitations as a defense because doing so would
permit the plaintiff to "us[e the] statute of limitations as a sword, so as to unjustly benefit from
his own conduct which induced the . . . delay filing suit."  Friedland, 131 N.C. App. at 806, 509
S.E.2d at 796 (citations omitted). The conduct forming the basis of the defendant's equitable
estoppel claim, Mercer's alleged misrepresentations, occurred prior to the execution and
recordation of the deed of trust and did not preclude or delay the defendant from filing suit. See,
e.g., Gore v. Myrtle/Mueller, 362 N.C. 27, 34, 653 S.E.2d 400, 405 (2007) (emphasizing that the
party asserting equitable estoppel is required to show, among other factors, that it had a "lack of
knowledge and the means of knowledge of the truth as to the facts in question[.]"); Jordan v.
Crew, 125 N.C. App. 712, 719–20, 482 S.E.2d 735, 739 (1997) ("Equitable estoppel arises when
a party has been induced by another's acts to believe that certain facts exist, and that party
'rightfully relies and acts upon that belief to his detriment.'" (quoting Thompson v. Soles, 299
N.C. 484, 487, 263 S.E.2d 599, 602 (1980))).

19

Despite indicating that the mistake in the deed of trust was not actually discovered until the filing of Mercer's individual bankruptcy case, the undisputed facts reveal that the defendant had both the capacity and opportunity to discover the discrepancy before January 19, 2007, a date three years prior to the filing of its complaint in Dare County.   At a minimum, the defendant should have been on notice that something was awry when the plaintiff was replaced by Mercer as the grantee on the deed of trust several days prior to closing.  See Cascadden, 2009 WL 1054035, at *2.  The plaintiff's argument, that the erroneous deed of trust was recorded and publicly available at the Dare County Registry, is strengthened by the fact that the defendant and its predecessor–in–interest are national banking institutions who apparently paid very little attention or concern to the details of this transaction.  See, e.g., Moore, 207 N.C. at 437, 177 S.E. at 408 (holding that an action was barred by the statute of limitations where the plaintiff was "an able and experienced business man . . . therefore, even a casual reading of the instruments at the time they were delivered would have disclosed [the mistake.]"); Stone, 2011 WL 5909158, at *5.  Customary practice and the defendant's own internal "red flag" checklist  indicate that Lehman Brothers reviewed or should have reviewed the appraisal submitted by Culpepper, which listed the current owner of the property as the plaintiff, not Mercer.  Moore, 207 N.C. at 437, 177 S.E. at 407.

The defendant's reliance on Vail and other authority for the proposition the mere recordation of the deed of trust is insufficient to impute constructive notice of the fact that Mercer was not the record owner of the property and the deed of trust was defective,  is misplaced.  The plaintiffs in

---

Because the defendant's delay in filing was not induced by Mercer's misleading statements at the outset of the transaction nor was the defendant unable to ascertain that the plaintiff was the record owner of the property, equitable estoppel does not bar application of the statute of limitations.  See Duke Univ. v. Stainback, 320 N.C. 337, 341, 357 S.E.2d 690, 693 (1987).

Vail moved to set aside a deed from a mother to her son as based on fraud. 233 N.C. at 111, 63

S.E.2d at 204.  The defendants claimed reformation of the deed, recorded over four years before the

action was filed, was barred by the three–year statute of limitations which accrued on the date of

recordation.  Id.  The court held that the plaintiffs' action was not barred by the statute of limitations

because there were no facts or circumstances on the face of the deed arousing suspicion as to the

fraud.  Id. at 117, 63 S.E.2d at 208; c.f. Cascadden, 2009 WL 1054035, at *2 (holding, based on

Vail, that the three–year limitations period commenced when the plaintiffs received their billing

statements, revealing an inconsistency with the terms of their loan because they had the capacity and

opportunity to inquire or exercise reasonable diligence to discover the fraud).  In reaching its

conclusion in Vail, the court observed that

> the mere registration of deed . . . will not, standing alone, be imputed for constructive
> notice of the facts constituting the alleged fraud, so as to set in motion the statute of
> limitations.  In addition to the record, there must be facts and circumstances
> sufficient to put the defrauded person [or aggrieved party] on inquiry which, if
> pursued, would lead to the discovery of the facts constituting the fraud.

233 N.C. at 117, 63 S.E.2d at 208 (citations omitted).  The facts and circumstances contemplated

by Vail are present in the instant case and are sufficient to place the defendant on inquiry of the

mistake – that Mercer was not the record owner of the property –  in the deed of trust. See id.  The

plaintiff's continued remittance of the monthly payment, tendered in its own name, for the obligation

incurred by Mercer should have aroused the defendant's suspicious regarding the ownership of the

property.  See Moore, 207 N.C. at 437, 177 S.E. at 408; Peacock, 142 N.C. at 218, 55 S.E. at 100;

Cascadden, 2009 WL 1054035, at *2.  This suspicion, if investigated, would have revealed that the

plaintiff, not Mercer, was listed as the record owner on both the city and county property tax records

and in the Dare County Registry. Stone, 2011 WL 5909158, at *5.  The defendant and Lehman

Brothers may not assert ignorance or lack of information of such records, when no further investigation was pursued.

Despite the defendant and Lehman Brothers having ample opportunities and reason to review the deed of trust or conduct an examination of the public record, neither can demonstrate a justification for their failure to so. See Hill, 51 N.C. App. at 40, 275 S.E.2d at 242.  Accordingly, the court finds nothing unfair, inequitable or unjust in charging the defendant with notice of the contents of the deed of trust, including the mistake. Id.; Moore, 207 N.C. at 437, 177 S.E.2d at 407; Cascadden, 2009 WL 1054035, at *2.  The defendant could have reasonably discovered the error in the deed of trust or that the plaintiff was the record owner of the property before January 19, 2007, and the statute of limitation as to its first, second, third, fourth, fifth and seventh claims asserted commenced on that date.  Because each of these claims is based on the alleged mutual mistake in the deed of trust, they all were brought outside of their applicable statutes of limitation and summary judgment in favor of the plaintiff is appropriate.

**CONCLUSION**

Based on the forgoing, the court concludes that there is no genuine issue of material fact that the defendant's first, second, third, fourth, fifth and seventh claims for relief are based on the alleged mutual mistake and, therefore, are barred by the three–year statute of limitations imposed by N.C. Gen. Stat. § 1–52(9).  Accordingly, the plaintiff's motion for summary judgment is **ALLOWED.**

**END OF DOCUMENT**