**SO ORDERED.**

**SIGNED this 2 day of May, 2013.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| IN RE: | |
| SEA HORSE REALTY & CONSTRUCTION, INC., | CASE NO. 10–06021–8–JRL |
| DEBTOR. | CHAPTER 11 |
| | |
| SEA HORSE REALTY & CONSTRUCTION, INC., | |
| PLAINTIFF, | |
| | ADVERSARY PROCEEDING |
| v. | NO. 11–-00377–8–JRL |
| CITIMORTGAGE, INC., SUCCESSOR–IN–INTEREST TO LEHMAN BROTHERS BANK, FSB, | |
| DEFENDANT. | |

**ORDER**

This matter came before the court on CitiMortgage, Inc.'s ("defendant"), successor–in–interest to Lehman Brothers Bank, FSB ("Lehman Brothers") (collectively "defendant") motion for reconsideration of an order, filed on February 1, 2013, allowing summary

1

judgment, which is opposed by Sea Horse Realty & Construction, Inc. ("plaintiff").

## BACKGROUND[1]

The plaintiff filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 21, 2011. On December 1, 2011, the plaintiff commenced this adversary proceeding against the defendant, seeking a determination that a deed of trust and the defendant's previously–filed proof of claim in the amount of $1,785,986.02 were invalid. The deed of trust that is the subject of this adversary proceeding was executed by Rickard B. Mercer ("Mercer"), the plaintiff's president and sole shareholder, in favor of Lehman Brothers and encumbered real property located at 10007 Old Oregon Inlet Road, Nags Head, North Carolina ("real property"). The deed of trust, executed on January 21, 2005 and recorded on January 24, 2005 in Book 1611 at Page 65 of the Dare County Registry, was prepared by Lori Neal of Lehman Brothers and secured Mercer's repayment of the promissory note he executed in favor of Lehman Brothers in the original principal amount of $1,500,000.00 ("promissory note").[2] The description and address of the real property encumbered by the deed of trust, however, matched the description and address present in the general warranty deed, executed on June 9, 2003, conveying the real property to the plaintiff.

Paulette S. Benz of The Law Office of Paulette S. Benz, PLLC (collectively "closing

---

[1]The court has set forth a two detailed recitations of the facts and circumstances surrounding the transaction, which prompted the present adversary proceeding in Sea Horse Realty & Construction, Inc. v. CitiMortgage, Inc. (In re Sea Horse Realty & Construction, Inc.), AP No. 11–00377, 2012 WL 3249548 (Bankr. E.D.N.C. Aug. 7, 2012) (hereinafter "Sea Horse I") and Sea Horse Realty & Construction Inc.v. CitiMortgage, Inc. (In re Sea Horse Realty & Construction, Inc.), AP No. 11–00377, 2013 WL 412928 (Bankr. E.D.N.C. Feb. 1, 2013) (hereinafter "Sea Horse II"). For purposes of clarity and for the benefit of the record, the court will reiterate and supplement those facts where necessary.

[2]The promissory note, deed of trust and all obligations Mercer owed thereunder were transferred to the defendant by assignment dated July 15, 2011.

attorney") was employed as the settlement agent for the transaction. Lehman Brothers submitted the closing attorney instructions and a list of necessary documentation required to be included in the loan closing package. The promissory note and deed of trust were prepared by Lehman Brothers and transmitted to the closing attorney for execution. In accordance with Lehman Brothers' instructions, the closing attorney performed a title examination, prepared a preliminary title opinion and obtained title insurance coverage. The preliminary opinion on title, prepared by the closing attorney and forwarded to the title insurance carrier for its approval, listed the plaintiff, not Mercer, as the record owner of the real property. The grantor in the deed of trust was changed from the plaintiff to Mercer at the suggestion of a mortgage broker with Carolina State Mortgage Company ("mortgage brokerage"). Thereafter, the closing attorney conducted the loan closing at her office and disbursed the loan proceeds after the deed of trust was executed and recorded with the Dare County Registry.

On May 18, 2009, Mercer filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, Case No. 09–04088–8–JRL. Mercer's Schedule A, filed along with his voluntary petition, did not list any legal or equitable interest in the real property encumbered by the deed of trust; however, he did indicate that the deed of trust secured his obligations under the promissory note.[3] After Mercer's bankruptcy filing and prior to the plaintiff's bankruptcy filing, the defendant

---

[3] In Mercer's bankruptcy case, the defendant filed a proof of claim in the amount of $1,543,555.91, which drew an objection by Mercer. The deed of trust and promissory note executed by Mercer in favor of Lehman Brothers were attached, as support, to the proof of claim. In his objection to the proof of claim, Mercer denied ownership of the real property allegedly secured by the deed of trust and requested that the claim be treated, in its entirety, as a general unsecured claim. Because the defendant did not file a response to the objection, the court entered an order on August 12, 2009, allowing Mercer's objection and the defendant was granted a general unsecured claim in the amount of $1,543,555.91.

3

filed a complaint in Dare County, North Carolina against the plaintiff, seeking reformation of the deed of trust; a declaratory judgment that the defendant holds a valid deed of trust; to quiet title; an equitable lien against the property; the imposition of a constructive trust; and a judicial sale of the property. In conjunction with the state court proceeding and to protect and provide public notice of its interest in the property, the defendant filed a *lis pendens* in Dare County, North Carolina on January 20, 2010. The claims asserted by the defendant in the state court proceeding were alleged as counterclaims in response to the plaintiff's complaint in this adversary proceeding.

After its previous motion for partial summary judgment proved unsuccessful,[4] the plaintiff filed the motion for summary judgment that is the subject of the defendant's motion for reconsideration, asserting that as a matter of law, the defendant's first, second, third, fourth, fifth and seventh counterclaims are barred by the three–year statute of limitations under N.C. Gen. Stat. § 1–52(9). On February 1, 2013 and after a hearing, the court entered an order allowing the plaintiff's motion for summary judgment. Sea Horse II, 2013 WL 412928, at *11. The court concluded, based on the pleadings, affidavits and other materials submitted by the parties, summary judgment was appropriate because the defendant's counterclaims, which were based on the alleged mutual mistake in the deed of trust, were barred by the three–year statute of limitations. Id. In reaching this conclusion, the court held that applicable statute of limitations governing the

---

[4]The plaintiff's partial motion for summary judgment, sought to exercise its strong–arm powers as the debtor–in–possession to invalidate the deed of trust because it did not accurately identify the obligation it secured and was therefore unenforceable. See Sea Horse I, 2012 WL 3249548, at *1. On August 7, 2012, the court denied the plaintiff's partial motion for summary judgment and "precluded [the debtor–in–possession] from exercising § 544 strong–arm powers to include the [real] property in the estate[]" because "the filed *lis pendens* gave the debtor in possession constructive notice of the pending litigation over the property . . . ." Id. at *3 (holding that the debtor–in–possession took the real property "subject to the outcome of the pending litigation as to title.").

counterclaims was the three–year limitations period proscribed in N.C. Gen. Stat. § 1–52(9), not the ten–year period under N.C. Gen. Stat. § 1–47(2), "because the latter is only applicable to an action against the principal executing an instrument under seal." Id. at *5–7 ("Because the promissory note and deed of trust were executed by Mercer, not by the plaintiff, the ten–year statute of limitations . . . does not apply."). Applying North Carolina law, the court concluded that summary judgment was appropriate given the fact that each of the defendant's counterclaims based on the alleged mistake were commenced outside the applicable limitations period because the defendant could have discovered that the plaintiff, not Mercer, was the record owner of the real property prior to January 19, 2007. Id. at *11. The court relied on separate bases to support charging the defendant with notice of the mistake in the deed of trust. First, the circumstances of the transaction at issue, including the fact that the deed of trust was prepared by Lehman Brothers and properly recorded in the public land records, put the defendant on notice of the contents thereof, including the mistake. Id. at *10. Additionally, a simple examination of the public land records and property tax records on file in Dare County, if undertaken by the defendant, would have revealed that the plaintiff was the record owner of the real property. Finally, the results of a title examination indicating that the plaintiff, not Mercer, owned the real property, may be imputed to Lehman Brothers because the closing attorney represented both Mercer and Lehman Brothers in the transaction. Id. at *8–9 (holding, based on N.C. State Bar CPR 100, that the closing attorney may "ethically represent both the borrower and the lender [in a residential loan transaction].").

On February 14, 2013, the defendant filed the motion currently before the court, requesting the court's prior order allowing the plaintiff's motion for summary judgment be reconsidered based on the availability of new evidence and to correct clear errors of law or fact upon which it was

based. Attached to the defendant's motion was a six–page supplemental affidavit, executed by Ellen Hatfield ("Hatfield") on February 14, 2013.[5]

## DISCUSSION

Rule 59(e) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Rule 9023 of the Federal Rules of Bankruptcy Procedure, permits reconsideration of a prior order or judgment under certain circumstances. Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023. The Fourth Circuit, in Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, stated that the *three* grounds for reconsideration, under Fed. R. Civ. P. 59(e) are: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." 674 F.3d 369, 377–78 (4th Cir. 2012) (quoting Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007)); accord Ingle v. Yelton, 439 F.3d 191, 197 (4th Cir. 2006). A motion for reconsideration "gives the . . . court a chance to correct its own mistake if it believes one has been made." Zinkand, 478 F.3d at 637 (citing Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998)). Although the rule permits a court to correct its own errors, a party may not "raise arguments which could have been raised prior to the issuance of the judgment, nor may [it] be used to argue a case under a novel theory that the party had the ability to address in the first instance." Pacific Insurance, 148 F.3d at 403 (citations omitted). Simply put, Fed. R. Civ. P. 59(e) "do[es] not authorize a 'game of hopscotch,' in which parties

---

[5]The defendant previously offered a two–page affidavit executed by Hatfield in its response opposing the plaintiff's motion for summary judgment ("original affidavit"). The affidavit asserted that the defendant first discovered the mistake, that Mercer did not own the real property encumbered by the deed of trust, during his individual chapter 11 bankruptcy case filed on May 18, 2009. The statements made in the original affidavit were, according to Hatfield, based on the knowledge she gained from reviewing the loan documents and origination file related to the transaction at issue.

switch from one legal theory to another 'like a bee in search of honey.'" Kiran M. Dewan, CPA, P.A. v. Walia, No. 11–2195, 2012 WL 4356783, at *2 (D. Md. Sept. 21, 2012) (quoting Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003)); see, e.g., Lostumbo v. Bethlehem Steel, Inc., 8 F.3d 569, 570 (7th Cir. 1993) (affirming the denial of Fed. R. Civ. P. 59(e) motion based on the fact that the affidavit sought to be introduced was available during the pendency of the summary judgment motion); RGI, Inc. v. Unified Indus., Inc., 963 F.2d 658, 662 (4th Cir. 1992).

## I.  Newly Discovered Evidence

The defendant argues that the court should reconsider its prior decision because it discovered new evidence establishing a genuine issue of material fact as to whether the defendant knew or should have known of the mistake in the deed of trust that the plaintiff, not Mercer, was the record owner of the real property. This alleged new evidence in Hatfield's supplemental affidavit relates to the procedures and processes by which the loan payments made by the plaintiff were applied to the outstanding balance and how the property taxes and insurance premiums relating to the real property were paid from escrow. The property taxes and insurance premiums were paid electronically by third–party vendors and they would not receive invoices indicating the owner of the property.[6] Loan payments, however, were processed by the defendant by referencing the loan account number on the payment voucher that typically accompanied the payment. The payor's name or identity, according to the defendant, was not referenced in processing a payment unless the payment was not timely.

---

[6]The defendant, by Hatfield's supplemental affidavit, alleged that the property taxes on the real property were paid electronically by a third–party vendor, whose system automatically compared and matched the real property's parcel number, address and description. The system, however, does not review or compare the outstanding property taxes owed against a borrower's name on the account.

7

A movant seeking reconsideration on the basis of newly discovered evidence must establish the following:

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

Boryan v. United States, 884 F.2d 767, 771 (4th Cir. 1989) (citations omitted). Therefore, "the movant is *obliged* to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing." Id. (emphasis in original) (holding that "[e]vidence that is available to a party prior to entry of judgment, therefore, is not a basis for granting a motion for reconsideration as a matter of law."(citations omitted)); see, e.g., Ingle, 439 F.3d at 197–98 (affirming the denial of a motion for reconsideration where the new evidence consisted of an affidavit detailing evidence that was available at the time the trial court entered summary judgment); RGI, 963 F.2d at 662 (refusing to consider a *supplemental* affidavit in support of a motion for reconsideration because the litigant cited "no justified reason" why the additional material was not previously presented).

After a thorough review of the record, the court is convinced that the defendant was or should have been aware of the evidence relating to its internal procedures and processes with due diligence prior to entry of summary judgment. Likewise, the defendant has failed to demonstrate any legitimate justification for its failure to present this evidence at the hearing. See SAS Inst. Inc. v. World Programming Ltd., No. 5:10–CV–25, 2011 WL 2491591, at *2 (E.D.N.C. June 22, 2011) (holding that an affidavit filed in support of a motion for reconsideration in the earlier proceeding

"contain[ed] information that was available during the . . . earlier motion to dismiss, and is not by itself grounds for relief under Rule 59(e)." (citation omitted)). The processes and information coined as "newly discovered evidence" by the defendant are merely its own internal procedures by which it processed payments received from borrowers and those of third–party vendors engaged to pay property taxes and insurance premiums from escrow. The defendant acknowledged, in its motion for reconsideration, that it had it had access to and knowledge of this evidence during the pendency of the prior proceedings and prior to entry of the order allowing summary judgment.[7] The defendant made no effort, in the interim period between the conclusion of hearing and the entry of the order, to request the court defer its ruling pending new evidence.[8] Unfortunately, the defendant's subsequent understanding of its own internal procedures and those of third–parties it employed does not make the evidence "newly discovered." <u>See</u>, <u>e.g.</u>, <u>Boryan</u>, 884 F.2d at 772; <u>Publishers Res. Inc. v. Walker–Davis Publ'ns, Inc.</u>, 762 F.2d 557, 561 (7th Cir. 1985) (emphasizing

---

[7]In its motion, the defendant admits that the issue of whether the payment of loan obligations, property taxes and insurance premiums placed it or its predecessor on actual or constructive notice as to the record owner of the real property was first raised by the plaintiff in a supplemental brief in support of its motion for summary judgment. This supplemental brief was filed by the plaintiff prior to the scheduled summary judgment hearing. Paragraph seven of the defendant's motion for reconsideration provides: "Since these issues were raised, the undersigned [counsel] and CitiMortgage have worked diligently to obtain facts describing the process by which payments were received and the property taxes and insurance premiums were paid from escrow." By its own admission, the defendant had the opportunity and capacity to uncover this evidence prior to the summary judgment hearing. Therefore, a reasonably diligent investigation prior to the hearing would have uncovered this information, all of which would be relevant to the arguments it made against allowing summary judgment.

[8]After the hearing, the defendant filed a second supplemental memorandum in opposition to the plaintiff's motion for summary judgment. The second supplemental memorandum, filed on January 22, 2013, stated that the property taxes on the real property were likely electronically submitted from escrow, but the defendant was currently seeking to secure an affidavit regarding the issue.

9

that a motion for reconsideration "cannot . . . be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of the summary judgment motion."). Moreover, the fact that the defendant discovered this evidence and information after commencing an investigation establishes that had it exercised reasonable diligence, it would have uncovered this information before the hearing and prior to entry of summary judgment. Boryan, 884 F.2d at 771. This evidence, therefore, cannot be a basis for reconsideration.[9]

## II.  Clear Error of Law

The defendant contends that this court relied on an incomplete factual recitation[10] and made a clear error of law when it concluded that the closing attorney's knowledge that the plaintiff was the record owner of the real property was imputed to Lehman Brothers because the closing attorney represented both parties (Lehman Brothers and Mercer) involved in the transaction. See Sea Horse II, 2013 WL 412928, at *8–9 (holding that the results of a title examination and preliminary title opinion conducted by the closing attorney "revealing that the plaintiff, not Mercer, was the record owner of the property would be imputed to Lehman Brothers."). Specifically, the defendant asserts that the court should not have relied upon North Carolina State Bar CPR 100 and the absence of a

---

[9]Alternatively, this alleged newly discovered evidence does not affect the outcome of the prior order. On the contrary, it provides additional support for the court's conclusion that the defendant, a national banking and lending institution, had both the capacity and opportunity to discover the discrepancy in the deed of trust more than three years prior the filing of the state court action. See Sea Horse II, 2013 WL 412928, at *10–11.

[10]The defendant asserts that a court's reliance on an incomplete factual recitation in reaching a prior decision is a ground for reconsideration under Fed. R. Civ. P. 59(e). This assertion, however, is misplaced. As previously mentioned, the Fourth Circuit has only endorsed three grounds for reconsideration of a prior decision under Fed. R. Civ. P. 59(e) and do not include the correction of errors of fact upon which the prior decision was based as the defendant suggests. See, e.g., Mayfield, 674 F.3d at 377–78, Zinkland, 478 F.3d at 637.

representation to the contrary by the closing attorney in determining whether an attorney–client relationship arose between the closing attorney and Lehman Brothers.  The closing attorney, according to the defendant, was ethically barred from representing Lehman Brothers in the transaction after a conflict of interest arose following Mercer's failure to disclose that the plaintiff was the record owner of the real property and alteration of the deed of trust at the suggestion of the mortgage broker.

For reconsideration to be allowed on the basis of clear error, the court's prior decision cannot be "just maybe or probably wrong; it must strike [the court] with the force of a five–week old, unrefrigerated dead fish." TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009) (quoting Bellsouth Telesensor v. Info. Sys. & Networks Corp., Nos. 92–2355, 92–2437, 1995 WL 520978, at *5 n. 6 (4th Cir. Sept. 5, 1995) (unpublished)); In re DEF Inv., Inc., 186 B.R. 671, 680–81 (Bankr. D. Minn. 1995) (holding that Fed. R. Civ. P. 59(e) "[is] not designed to furnish a vehicle by which a disappointed party may reargue matters already argued and disposed of, nor [is it] aimed at providing a mechanism by which new arguments or legal theories, which could and should have been raised prior to the issuance of judgment, can be later advanced." (citation omitted)).  The prior decision, therefore, "must be 'dead' wrong." McKinney v. Colvin, No. 1:11–CV–199, 2013 WL 1320788, at *1 (W.D.N.C. Apr. 1, 2013) (denying reconsideration on the basis of clear error where the Fed. R. Civ. P. 59(e) motion was "merely a rephrasing of arguments previously made.").

The defendant does not contest, however, the court's alternate analysis upon which it relied in charging the defendant with constructive notice of the mistaken contents of the deed of trust.  Specifically, this court addressed numerous circumstances where North Carolina courts have held, as a matter of law, that a party failed to exercise due diligence in discovering a mistake in an

instrument.  See Stone v. Gateway Bank & Trust Co. (In re Stone), AP No. 11–00006, 2011 WL 5909158, at *3–4 (Bankr. E.D.N.C. Aug. 15, 2011); see also Moore v. Fidelity and Cas. Co. of N.Y., 207 N.C. 433, 177 S.E.2d 406 (1934); Grubb Props., Inc. v. Simms Inv. Co., 101 N.C. App. 498, 400 S.E.2d 85 (1991); Jennings v. Lindsey, 69 N.C. App. 710, 715, 318 S.E.2d 318, 321 (1984); Huss v. Huss, 31 N.C. App. 463, 468, 230 S.E.2d 159, 163 (1976); Morgan v. Cadieu, No. COA11–564, 2011 WL 6402192, at *2–3 (N.C. Ct. App. Dec. 20, 2011) (unpublished); Cascadden v. Household Realty Corp., WCRSI, LLC, No. COA08–805, 2009 WL 1054035, at *1–2 (N.C. Ct. App. Apr. 21, 2009) (unpublished).  The court found these decisions instructive and held that the following circumstances, in addition to recordation, should have placed the defendant on the requisite notice of the mistake in the deed to trust and commence the statute of limitations period: (1) Lehman Brothers' review, during the loan approval process, of the appraisal prepared by a third–party that listed the plaintiff as the owner of the real property; (2) Lehman Brothers' internal checklist which indicating that it had reviewed the appraisal and the borrower's name (Mercer) matched the owner of the real property listed on the appraisal and the title commitment; (3) the defendant's continuous receipt of payments under the promissory note made by plaintiff, not Mercer; and (4) the defendant's payment of property taxes and insurance premiums from escrow where the plaintiff, not Mercer, was listed as the owner on the corresponding property tax records on file.  See Sea Horse II, 2013 WL 412928, at *8, 10–11.

Although the defendant has accused this court of committing a clear error of law, it is attempting to argue and relitigate matters that were previously addressed.  The arguments concerning the applicability of N.C. State Bar CPR 100 and imputation of the results of the closing attorney's title examination to Lehman Brothers were previously raised by the defendant in its

12

responses to the plaintiff's motion for summary judgment and considered by the court in allowing summary judgment.  See Sea Horse II, 2013 WL 412928, at *11; see also McKinney, 2013 WL 1320788, at *1; Kaufmann v. Travelers Cos., Inc., No. 09–0171, 2010 WL 2639879, at *1–2 (D. Md. June 29, 2010) (denying a motion for reconsideration where the arguments "are simply reiterations of arguments made in . . . response to Defendant's motion for summary judgment and have been dealt with by the court in its previous memorandum opinion.").  Although the defendant is entitled to disagree with the court's analyses and conclusion, "[m]ere disagreement with the court's decision will not result in granting a Rule 59(e) motion." Id. at *2 (citing Hutchinson v. Staton, 994 F.2d 1076,1082 (4th Cir. 1993)(alterations omitted)); see Medlock v. Rumsfeld, 336 F. Supp. 2d 452, 470 (D. Md. 2002) ("Where a motion does not raise new arguments, but merely urges the court to 'change its mind,' relief is not authorized.").  Far from being clearly erroneous, this court's order allowing summary judgment was "factually supported and legally justified." Hutchinson, 994 F.2d at 1081–82.

## CONCLUSION

Based on the foregoing, the defendant has failed to supply the court with newly discovered evidence or demonstrate a clear error of law warranting the extraordinary remedy it seeks. Accordingly, the defendant's motion for reconsideration is **DENIED.**

**END OF DOCUMENT**