IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:13-CV-44-FL

| | | |
|---|---|---|
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SEA HORSE REALTY & | ) | |
| CONSTRUCTION, INC., | ) | |
| | ) | |
| Appellee. | ) | |

This matter is before the court on appeal by CitiMortgage, Inc., successor-in-interest to Lehman Brothers Bank, FSB ("Lehman Brothers"), from an order of the United States Bankruptcy Court dated February 1, 2013. Notice of appeal was filed on July 12, 2013, pursuant to 28 U.S.C. § 158(a), within the time period allotted by Fed. R. Bankr. P. 8002. The appeal has been fully briefed, and the matter is now ripe for decision. For the reasons that follow, the decision below is AFFIRMED.

## STATEMENT OF THE CASE

Appellee, a North Carolina corporation in the business of construction, management, and rental of real property in northeastern North Carolina, filed for relief under Chapter 11 of the Bankruptcy Code on September 21, 2011. Appellee was, at all relevant times, owner of certain residential real property located at 10007 Old Oregon Inlet Road, Nags Head, North Carolina ("the property"). Appellee initiated an adversary proceeding against appellant, seeking a determination that a deed of trust held by appellant is invalid, and as a result, appellant does not have a claim against it. Appellant answered and made seven counterclaims: (1) for reformation of the deed of

trust, (2) for a declaratory judgment that the deed of trust encumbers the property, (3) to quiet title, (4) for an equitable lien, (5) for a constructive trust, (6) seeking judicial sale, and (7) for unjust enrichment.

On October 9, 2012, plaintiff filed a motion for summary judgment, asserting that appellant's first, second, third, fourth, fifth, and seventh claims for relief are barred by a three-year statute of limitations under N.C. Gen. Stat. § 1-52(9).[1] The bankruptcy court held a hearing on appellee's motion for summary judgment on January 14, 2013. By order entered February 1, 2013, the bankruptcy court found in favor of appellee. After the bankruptcy court denied its motion to reconsider, appellant filed notice of appeal on July 12, 2013. The record on appeal was docketed in this court on that same day. The parties thereafter filed their briefs for the court's consideration.

## STATEMENT OF FACTS

Where the parties have not objected to the bankruptcy judge's findings of fact, the court, discovering no error, adopts said findings and incorporates them herein. The court also summarizes the relevant facts below:

On or about June 9, 2003, Roscoe Lewis Limited Partnership I and Roscoe Lewis Limited Partnership II executed a deed, conveying the property to appellee in fee simple. The deed conveying the property to appellee is publicly recorded. Appellee's president and sole stockholder is Rickard B. Mercer ("Mercer").

At some point thereafter, Mercer contacted the Carolina State Mortgage Company ("CSM") to assist him in refinancing a construction loan held by The Bank of Currituck, which loan was secured by the property. At the request of CSM, the property was appraised in October 2004, by

---

[1] Appellant's sixth claim was for judicial sale of the property. Before appellee filed the instant motion for summary judgment, however, the property was sold with consent of the parties. The proceeds of the sale are being held in trust pending the outcome of this matter. Accordingly it appears that appellant's sixth claim for relief is moot.

2

Otis G. Culpepper of Culpepper & Associates. CSM provided the appraisal – which stated appellee was the current owner of the property – to Lehman Brothers. Lehman Brothers agreed to refinance the construction loan in the amount of one million five hundred thousand dollars ($1,500,000.00).

The closing attorney employed for this transaction was Paulette S. Benz of the Law Office of Paulette S. Benz, PPLC ("Benz"). As closing attorney, she received instructions from Lehman Brothers regarding the documentation to be included in the loan closing package. The closing documents were prepared by Lehman Brothers and given to Benz. Benz performed a title search and created a preliminary opinion on title stating that appellee was the record owner of the property. CSM subsequently told Benz to replace appellee with Mercer as grantor on the deed of trust, and she did so.

On January 21, 2005, Mercer executed a promissory note in the amount of one million five hundred thousand dollars ($1,500,000.00), and a demand deed of trust in favor of Lehman Brothers, pledging the property as security. Mercer initialed and signed both documents, which both list "RICKARD B MERCER" as borrower. The deed of trust states it was prepared by Lori Neal of Lehman Brothers. Although Mercer executed these documents, as noted above, the owner of the property was appellee.

As was noted in the bankruptcy court's order, the real property tax records publicly filed with the Town of Nags Head Tax Department and the Dare County Tax Department list appellee as the record owner of the property from 2004 to 2011. It is also undisputed that appellant sent monthly mortgage statements to Mercer, and appellee tendered checks drawn from its account in payment.

On May 18, 2009, Mercer filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Appellant filed proof of claim, attaching the deed of trust and promissory note executed by Mercer in favor of Lehman Brothers. Mercer objected to this proof of claim, asserting

3

that he was not owner of the property. The court allowed Mercer's objection, and appellant was treated as a general unsecured creditor. Appellant maintains it was at this time that it learned that the loan to Mercer was unsecured. Appellant then filed suit in state court on January 19, 2010, seeking reformation of the deed of trust, declaratory judgment that it holds a valid deed of trust, to quiet title, an equitable lien against the property, a constructive trust, and judicial sale of the property.

Appellee filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 21, 2011. Appellant again filed proof of claim, again attaching the deed of trust and promissory note executed by Mercer in favor of Lehman Brothers. Appellee objected, and the court entered a consent order continuing hearing on appellee's objection pending the outcome of an adversary proceeding on the matter.

Appellee instituted an adversary proceeding on December 1, 2011, against appellant, seeking a determination that the deed of trust is invalid and, accordingly, the appellant does not have a claim against it. Appellant answered and filed its counterclaims. Appellee filed motion for summary judgment on October 9, 2012, arguing that there is no genuine issue of material fact that the appellant's first, second, third, fourth, fifth and seventh claims for relief are time-barred pursuant to the three-year statute of limitations for fraud or mistake set forth in N.C. Gen. Stat. § 1-52(9). The bankruptcy court granted appellee's motion for summary judgment, and appellant brings this appeal.

## DISCUSSION

A.   Standard of Review

This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to review the bankruptcy court's order. "On an appeal [from the bankruptcy court] the district court . . . may

4

affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. Findings of fact are reviewed for clear error, and questions of law are reviewed *de novo*. Bowers v. Atlanta Motor Speedway (In re Southeast Hotel Properties Ltd. Partnership), 99 F.3d 151, 154 (4th Cir. 1996); see also Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").

The bankruptcy court granted summary judgment for appellee under Federal Rule of Civil Procedure 56, made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056. Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

Appellant asserts that the bankruptcy court erred in granting appellee's summary judgment. Appellant argues that if a three year statute of limitations applies, it has not yet run, and even if it has, appellee should be estopped from raising it as a defense. Appellant further contends that

appellee ratified the note, and is therefore bound by it. In the event of ratification, appellant contends that a ten (10) year statute of limitations applies.

Pursuant to N.C. Gen. Stat. § 1-15(a) "[c]ivil actions can only be commenced within the periods prescribed in this Chapter." The limitations period for a claim "[f]or relief on the ground of fraud or mistake" is three years. N.C. Gen. Stat. § 1-52(9). However, "the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." Id. In North Carolina, "it is the accepted rule that [k]nowledge by the defrauded person of facts which in the exercise of proper diligence would enable him to learn of the fraud ordinarily is equivalent to discovery of the fraud." Vail v. Vail, 233 N.C. 109, 116, 63 S.E.2d 202, 207 (1951) (quotations omitted). Thus, "the cause of action shall be deemed to have accrued from the time the fraud was known or should have been discovered in the exercise of ordinary diligence." Moore v. Fidelity and Cas. Co. of N.Y., 207 N.C. 433, 177 S.E. 406, 408 (1934). Where it is "clear that there was both capacity and opportunity to discover the mistake" failure to exercise due diligence may be found as a matter of law. Huss v. Huss, 31 N.C. App. 463, 468, 230 S.E.2d 159, 163 (1976) (citing Moore, 177 S.E.2d at 408).

1.     Whether the Closing Attorney's Knowledge Should be Imputed to Appellant

Appellant first argues that the bankruptcy court erred in holding that Benz's knowledge that appellee owned the property should be imputed to appellant. Appellant maintains that Benz's knowledge should not be imputed to it because Benz did not represent Lehman Brothers when acting as closing attorney. Generally, however, a lawyer may represent both the borrower and lender, and will be deemed to represent them both unless she gives timely notice to the party she does not intend to represent of that fact. N.C. St. B. CPR 100 (April 15, 1977); see also Johnson v. Schultz, 364

N.C. 90, 94-95, 691 S.E.2d 701, 704-05 (2010). Here, Benz gave no such notice that she did not intend to represent Lehman Brothers. Accordingly, her knowledge that appellee owned the property is properly imputed to appellant, and the statute of limitations had run before appellant instituted its state court action.

Appellant asserts that the bankruptcy court erred in relying on state ethics opinions as they are only rules which should be followed, and it is the facts of the case that determine who Benz represented. The rules set forth in CPR 100 clearly state that in the absence of notice to the contrary, a closing attorney is deemed to represent both parties. Furthermore, the court, in looking to the facts of the case, finds Benz did not give any such notice. She is therefore deemed to represent both borrower and lender. Appellant cites N.C. St. B. RPC 210 claiming that Benz could not permissibly represent both parties and was required to withdraw due to a conflict. However, this very opinion reaffirms the rule laid down by CPR 100, stating that if a closing lawyer "does not intend to represent both the buyer and the lender, the lawyer must give timely notice to the party that the lawyer does not intend to represent . . . . If the lawyer does not give such notice, the lawyer will be deemed to represent both the buyer and the lender." Id. (citations omitted).

Appellant argues that even if Benz represented Lehman Brothers, there is a genuine issue as to whether she acted to defraud Lehman Brothers. When an agent acts to defraud the principal, her knowledge is not imputed to the principal. Thomas-Yelverton Co. v. State Capital Life Ins. Co., 238 N.C. 278, 282, 77 S.E.2d 692, 694 (1953). Appellant puts forth no evidence that Benz was acting to defraud Lehman Brothers in this case. It merely notes that in one other of the approximately ten (10) transactions involving Mercer or appellee where Benz was the closing attorney she also executed the closing documents in a manner that mistakenly created an unsecured

transaction. Mercer Dep. 68 (DE 5-3 at 73). From this, appellant speculates that Benz may have intentionally acted to defraud Lehman Brothers. This speculation is not competent evidence sufficient to avert summary judgment. See Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984) ("Genuine issues of material fact cannot be based on mere speculation or the building of one inference upon another."). Where appellant had constructive knowledge of appellee's ownership of the property through Benz, the statute of limitations ran before appellant instituted its state court action.

    2.    Whether Appellant Should Have Known about the Mistake

Even assuming that Benz's knowledge is not properly imputed to appellant, the bankruptcy court correctly granted summary judgment for appellee where there is no genuine issue of material fact that appellant should have discovered the mistake in the exercise of due diligence before January 19, 2007, the date three years before it instituted its state court action. Appellant correctly states that "the mere registration of deed . . . will not, standing alone, be imputed for constructive notice of the fact constituting the alleged fraud, so as to set in motion the statute of limitations." Vail, 63 S.E.2d at 208. When, however, there are "facts and circumstances sufficient to put the defrauded person on inquiry which, if pursued would lead to the discovery of the facts constituting the fraud," the statutory period begins to run. Id.

As set forth by the bankruptcy court, appellant reviewed, or should have reviewed, the appraisal in its possession that stated appellee, not Mercer, was owner of the property. Indeed, appellant had a "red flag" checklist, that was completed by its subsidiary, Aurora Loan Services, on January 25, 2005. See Red Flag Checklist (DE 5-7, at 21). One of the items on this list was whether the "borrower's name appears as 'purchaser' or 'owner'" on the appraisal. Id. Thus, appellant

should have been on notice to inquire further so as to uncover the mistake at least as of January 25, 2005.

Appellant, relying on Hudgins v. Wagoner, 204 N.C. App. 480, 486, 694 S.E.2d 436, 442 (2010), maintains the mere fact that the red flag checklist was completed is evidence of due diligence, despite the fact that it incorrectly stated that the listed owner on the appraisal was the same as the borrower. In Hudgins, defendants listed a tract of land for sale on the Multiple Listing Service ("MLS") database of real estate listings. Id. Plaintiff, who claimed an interest in the property, was a real estate broker who regularly searched the listings as a part of his work. Id. Plaintiff testified that he would have expected to see the property if it was listed for sale on the MLS, but he did not see it listed there. Id.

Hudgins is distinguishable from the case at hand. In Hudgins, the plaintiff was searching the MLS for work-related reasons, not looking for the property at issue in that case. Id. In his search he did not see or notice the property listed. Id. In this case, by contrast, appellant failed to notice information regarding the very transaction it was engaging in and reviewing. Appellant's carelessness in failing to note the information contained in the appraisal it had in its possession is not transformed into due diligence because its review, through its subsidiary, of that very information was carelessly conducted. In sum, the bankruptcy court did not err in determining that the statute of limitations had already run.[2]

---

[2] The bankruptcy court also found that appellant should have been on notice regarding the ownership of the property where appellee, not Mercer, tendered monthly payments on the note in its own name. After the bankruptcy court entered its order, appellant submitted an affidavit which stated that "the process used by [appellant] to receive and credit payments is based on account or loan number, not the name on the payment check." Ellen Hatfield Aff. ¶ 22 (DE 6-1 at 13). The bankruptcy court properly refused to reconsider on the basis of this affidavit where it found that appellant "was or should have been aware of the evidence relating to its internal procedures and processes with due diligence prior to entry of summary judgment." In re Sea Horse Realty & Const., Inc., 10-06021-8-JRL, 2013 WL 1856265, at *4 (Bankr. E.D.N.C. May 2, 2013); see also RGI, Inc. v. Unified Indus., Inc., 963 F.2d 658, 662 (4th Cir. 1992) (reviewing for abuse of discretion the district court's refusal to accept untimely evidence on a motion to reconsider).

9

### 3. Whether Appellee Should be Equitably Estopped from Raising the Statute of Limitations

Appellant further contends that the bankruptcy court erred in concluding there was no genuine issue of material fact with respect to whether appellee should be equitably estopped from asserting the statute of limitations. In North Carolina, the elements of equitable estoppel are

> (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must (1) lack the knowledge and the means of knowledge as to the real facts in question; and (2) have relied upon the conduct of the party sought to be estopped to his prejudice.

Gore v. Myrtle/Mueller, 362 N.C. 27, 39, 653 S.E.2d 400, 408 (2007). As was noted above, appellant had the means of knowledge to discover the real facts. Accordingly, equitable estoppel is not proper here.

### 4. Whether Appellee Ratified the Promissory Note and/or Deed of Trust

Appellant next contends that appellee ratified the note and/or deed of trust.

> It is fundamental that acts performed by an agent beyond the scope of his authority, and even acts performed by one who in point of fact is not an agent, but who assumes to act as an agent, may, if they could lawfully have been delegated, be ratified by the principal. . . . [R]atification is the affirmance by a person of a prior act which did not bind him, but which was done or professed to be done on his account, whereby the act is given effect as to some of all persons, as if originally authorized.

Jones v. Bank of Chapel Hill, 214 N.C. 794, 798, 1 S.E.2d 135, 137 (1939). To establish ratification, a party must show (1) that the principal had full knowledge of the material facts at the time of the alleged ratification, and (2) that the principal showed intent to ratify by either word or conduct. Carolina Equip. & Parts Co. v. Anders, 265 N.C. 393, 400-01, 144 S.E.2d 252, 258 (1965).

While the bankruptcy court did not expressly consider appellant's ratification argument in its order, this court finds no error in its decision granting appellee's summary judgment motion. For

appellee to have ratified the note and/or deed of trust, Mercer must have, at minimum, purported to act as appellee's agent. See Jones, 1 S.E.2d at 137. There is no evidence in this case that Mercer purported to act as appellee's agent here. Indeed, he signed the note and deed of trust as an individual.

Appellant, relying on Snyder v. Freedman, 300 N.C. 204, 266 S.E.2d 593 (1980), contends that Mercer was acting as appellee's agent because Mercer is appellee's sole shareholder. The court in Snyder concluded that "under some circumstances, the action of all the shareholders of a close corporation may bind the corporation even if the corporation is considered to be a legal entity separate from the shareholders." Id. at 210, 266 S.E.2d 598-99. The contract at issue in Snyder was signed by all of the shareholders of a corporation, and required certain actions from the corporation. Id. at 214, 266 S.E.2d 600. Accordingly the court reversed the dismissal of certain of plaintiff's claims, concluding that the plaintiff might be able to prove the shareholders were acting as the corporation's agents. Id.

In this case, unlike in Snyder, although Mercer is the sole shareholder of appellee, the agreement involves a loan that Mercer, not appellee, was required to pay. Unlike the signatories in Snyder, Mercer was not signing a contract that required action by the corporation. He was not otherwise purporting to act for appellee, but rather was obtaining a loan for himself. Thus, there can be no ratification of his actions by appellee.

## CONCLUSION

Based upon the foregoing, the bankruptcy court's decision granting appellee's motion for summary judgment is AFFIRMED.

SO ORDERED, this the 9th day of October, 2013.

*Louis W. Flanagan*

LOUISE W. FLANAGAN
United States District Judge